IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

MEGAN JURIC, JUSTINE STUHL, ON )
BEHALF OF THEMSELVES AND ALL )
OTHERS SIMILARLY SITUATED; )
                Plaintiffs, )
        vs. )
DICK'S SPORTING GOODS, INC., )

2:20-CV-00651-MJH

        Defendant,

**Memorandum Opinion**

Plaintiffs have brought the within action against Defendant, Dick's Sporting Goods, Inc. ("Dick's"), for a putative Fair Labor Standards Act ("FLSA") collective action. (ECF Nos. 1 and 44). Dick's has filed Motions to Compel Arbitration, Strike Consent Forms, and Dismiss the Claims of those Purported Opt-in Plaintiffs, who have agreed to arbitrate claims, on the basis that those individuals should be compelled to pursue their claims in arbitration. ("Motion to Compel") (ECF Nos. 7 and 19). The Purported Opt-in Arbitration Plaintiffs are Anthony Albacete, Dennis Alvarez, Connor Donnelly, Joseph Downar, Steven Everitt, Lazaro Fuentes Hernandez, Hillary Goodliff, John Hickey, Heather Jaxx, Kenneth Kanowitz, Alexis Lissabet, Lorenzo Moreira, Lindsey Powell, Gina Pysola, Falon Saint James, Chad Sell, and Hunter Whitaker. (ECF Nos. 3 and 15). The matter is now ripe for consideration.

Upon consideration of Dick's Motions to Compel Arbitration, Strike Consent Forms, and Dismiss the Claims of the Purported Opt-in Plaintiffs and Briefs in Support (ECF Nos. 7, 8, 19, and 20), Plaintiffs' Brief in Opposition (ECF No. 43), Dick's Reply Brief (ECF No. 45), Plaintiffs' Sur-Reply Brief (ECF No. 48), the Parties' Joint Status Report (ECF NO. 51), and for the following reasons, Dick's Motion to Compel Arbitration will be granted.

I.      Background

This lawsuit seeks to recover unpaid overtime compensation for Plaintiffs and their similarly situated co-workers who have worked for Dick's in the United States as exempt-classified Assistant Sales Mangers and Assistant Store Managers at Defendant's retail locations. (ECF No. 44 at ¶ 1).  Of the individuals who have sought consent to opt-in to the collective action, Dick's argues that seventeen (17) of the Purported Opt-In Arbitration Plaintiffs signed and accepted a binding Agreement to Arbitrate Claims.  (ECF Nos. 7 and 19).  Accordingly, Dick's has moved to compel arbitration and dismiss those seventeen (17) Purported Opt-in Arbitration Plaintiffs so that they can pursue their FLSA claims individually through arbitration. *Id*.  Plaintiffs challenge the validity of the formation of the Arbitration Agreement between Dick's and the Purported Opt-in Arbitration Plaintiffs.  (ECF No. 43).

The parties met and conferred regarding the pending Motion to Compel Arbitration and filed a Joint Status Report. (ECF No. 51).   In said Report, the Parties agreed that Plaintiffs identified six "formation" challenges to the Arbitration Agreement: (1) Plaintiffs argue they did not receive the Agreement; (2) Plaintiffs argue the Agreement was not signed by Dick's; (3) seven Plaintiffs assert that Dick's pressured them to acknowledge the Agreement; (4) five Plaintiffs asserted they do not recall acknowledging the Agreement; (5) three Plaintiffs deny acknowledging the Agreement; and (6) one Plaintiff  asserted that he unchecked his acknowledgment of the Agreement through the human resources online program.

II.     Standard of Review

A.  Court's Authority to Address Contract Formation for Arbitration Agreements

 "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also ... 'whether the parties have agreed to arbitrate,' " in what is called a "delegation

clause." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, —— U.S. ——, 139 S. Ct. 524, 529,

202 L.Ed.2d 480 (2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130

S.Ct. 2772, 177 L.Ed.2d 403 (2010)).  However, even when questions of arbitrability have been

delegated to the arbitrator the court must decide issues concerning contract formation. *Granite*

*Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue

concerns contract formation, the dispute is generally for the courts to decide."); *Buckeye Check*

*Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1, 126 S. Ct. 1204 (2006) (distinguishing

between arbitral questions of contract validity and nonarbitral questions of whether a contract

was "ever concluded"); *Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225 (4th Cir. 2019)

("[T]he district court – rather than the arbitrator – [must] decide whether the parties have formed

an agreement to arbitrate.").

### B.  Motion to Compel Arbitration Standard and Burden of Proof

When adjudicating a motion to compel arbitration, the court must address two issues: (1)

whether the parties have entered into a valid written agreement to arbitrate, and (2) whether the

dispute in question falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio*

*Corp.*, 401 F.3d 529, 532 (3d Cir.2005).  Plaintiffs do not dispute that the FLSA claim would fall

within the scope of the Arbitration Agreement, but only if Purported Opt-in Arbitration Plaintiffs

entered into a valid written agreement.   The party seeking to avoid arbitration bears the burden

of proving invalidity of an arbitration agreement.  *Comrey v. Discover Fin. Servs., Inc.*, 806 F.

Supp. 2d 778, 783 (M.D. Pa. 2011) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92

(2000).

The standard of review applicable to motions to compel arbitration varies. The Rule

12(b)(6) standard applies when it is "apparent" from the face of the complaint and documents

upon which the complaint relies "that certain of a party's claims are subject to an enforceable arbitration clause...." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). *See also Morina v. Neiman Marcus Grp., Inc.*, 2014 WL 4933022, at *6 (E.D. Pa. Oct. 1, 2014).

On the other hand, if " 'the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue,' " then the Court should permit limited discovery on the factual issue of whether there is a valid arbitration agreement. *Morina*, 2014 WL 4933022, at *6 (quoting *Guidotti*, 716 F.3d at 776). Once this limited discovery is complete, the movant may submit a renewed motion to compel arbitration, which the Court will evaluate under the summary judgment standard. *Guidotti*, 716 F.3d at 776; *Morina*, 2014 WL 4933022, at *6. If the Court then finds that summary judgment is inappropriate because the party opposing the motion to compel arbitration can show "a genuine dispute as to the enforceability of the arbitration clause," then the Court may proceed to a trial about "the making of the arbitration agreement...." *Guidotti*, 716 F.3d at 776 (internal quotations omitted). *See also Morina*, 2014 WL 4933022, at *6. Thus, as a threshold matter, the Court must determine whether an agreement to arbitrate is apparent from the Complaint and supporting documents. *See Guidotti*, 716 F.3d at 776; *Morina*, 2014 WL 4933022, at *6.

III.    Discussion

   A. **Receipt of the Arbitration Agreement**

The Purported Opt-In Arbitration Plaintiffs challenge Dick's Motion to Compel because they did not receive a copy of the Arbitration Agreement.   Because they did not receive the Arbitration Agreement, the Purported Opt-In Arbitration Plaintiffs contend that Dick's failed to

satisfy a condition precedent to bind the employees, and thus there is no agreement to arbitrate. Dick's denies that the Arbitration Agreement requires that Dick's delivers a hard copy to its employees.   Dick's further contends that Plaintiffs misrepresent the language of the agreement because the language of the Arbitration Agreement provides that by continuing to work after receiving the Agreement, the employees are bound by the Agreement.   Dick's also argues that the Arbitration Agreement provides that "receipt" occurs when the employee completes the onboarding process within Dick's human resources software.   The parties agree that the Court may decide this challenge on the existing record. (ECF No. 51 at p. 3).

In her Declaration, Deborah Victorelli, Dick's Sporting Goods' Vice President of Human Resources, states that Dick's utilizes a customized version of PeopleSoft software for its Human Resources Management System ("HRMS").   (ECF No. 8-1 at ¶2).   PeopleSoft includes a self-service employee portal through which Dick's employees access, input, and retrieve information about their employment with Dick's.   *Id.*   During their employment, the Purported Opt-in Arbitration Plaintiffs executed Dick's Agreement to Arbitrate Claim.   *Id*. at ¶ 4.   New employees execute the Arbitration Agreement during an onboarding process that includes inputting information when they are given access to a computer terminal.   *Id.* at ¶ 5.   The onboarding process presents the employee with a series of electronic forms that must be filled out by the employee. *Id*. at ¶ 6.   When employees reach the stage of the Arbitration Agreement, they have the option to click a hyperlink and receive a PDF copy of the Agreement to Arbitrate Claims.   *Id*. at ¶ 9.   Employees are also permitted to print out a copy of the Agreement for their own records.   *Id.*   After an employee has reviewed the Agreement to Arbitrate Claims, the software does not allow them to proceed until they affirmatively acknowledge receiving and

agreeing to the terms of the Agreement to Arbitrate Claims by selecting a check box labeled "Arbitration Agreement Acknowledgment." *Id*. at ¶ 11.

In response, seven of the Purported Opt-in Arbitration Plaintiffs submitted declarations in which they recall acknowledging receipt of the Arbitration Agreement  (ECF Nos. 43-2, 43-7, 43-8, 43-11, 43-12, 43-14, and 43-16), while eight of the Purported Opt-in Arbitration Plaintiffs either denied or could not recall whether they acknowledged receipt of the Arbitration Agreement (ECF Nos. 43-3, 43-4, 43-5, 43-6, 43-9, 43-10, 43-13, and 43-15).   Dick's ran an inquiry into the PeopleSoft system and provided a date and time stamp wherein all Purported Opt-in Arbitration Plaintiffs had acknowledged receipt of the Arbitration Agreement.  (ECF No. 8-1 at pp. 33-40).  The Purported Opt-in Arbitration Plaintiffs do not refute the acknowledgment process described in Deborah Victorelli's declarations.

Plaintiffs have cited no case law that an arbitration agreement is only valid when the signatory is provided with a copy of the agreement.  Courts instead have held that physical receipt of or a physical signature of an arbitration agreement is unnecessary.  *See e.g. Keller v. Pfizer, Inc.*, 2018 WL 5841865, * 3 (M.D.Pa. Nov. 8, 2018) (rejecting plaintiff's argument that she should not be bound by the arbitration agreement simply because she did not sign a physical paper contract as archaic)[1].   Further, courts have held that a "party may manifest assent to a contract by clicking a link on a website." *Argun v. Neiman Marcus Grp., Inc.*, 2020 WL 1272247, at *9 (D.N.J. Mar. 16, 2020).

---

[1] While the Purported Opt-in Arbitration Plaintiffs worked for Dick's in multiple states, Plaintiffs contend that Pennsylvania contract law applies with regard to the formation of contracts. (ECF No. 43 at p. 7).  As the parties agree on choice of law, the Court will conduct no independent analysis on the same.

Here, Deborah Victorelli described the onboarding process for the Purported Opt-in Arbitration Plaintiffs, wherein she describes a process by which employees affirmatively acknowledge receiving and agreeing to the Agreement to Arbitrate Claims.  In that process, each employee must acknowledge receipt before completing the onboarding process and beginning employment.   While some of the purported Opt-in Arbitration Plaintiffs have denied acknowledging receipt of the Arbitration Agreement, Dick's HRMS reports refute these denials. In response to Dick's motions, Plaintiffs have produced no affidavits or other evidence that rebuts Dick's onboarding process or the accuracy of its record keeping methods.   By design, the onboarding process for the Purported Opt-in Arbitration Plaintiffs could not have been completed unless each acknowledged receipt of the Arbitration Agreement.  Furthermore, Plaintiffs provide no legal authority that would have required Dick's to provide anything other than the text of the Arbitration Agreement through the electronic onboarding process. Therefore, Plaintiffs arguments, regarding receipt and/or acknowledgment of the Arbitration Agreement, lack merit.  It is apparent from the face of the Complaint and supporting documents that all Opt-in Arbitration Plaintiffs received a copy of the Arbitration Agreement.

Accordingly, the Court rejects Plaintiffs' challenge to Defendant's Motion to Compel Arbitration on the basis that Purported Opt-in Arbitration Plaintiffs failed to receive a copy of the Arbitration Agreement.

### B.  Lack of Dick's Signature on Arbitration Agreement

Plaintiffs next challenge Dick's Motion to Compel Arbitration because Dick's did not sign the Arbitration Agreements, and thus did not fulfill a condition precedent to contract formation.  Dick's contends that no authority supports Plaintiffs' arguments.  The parties do not dispute that Dick's did not sign the Arbitration Agreement.   Under the terms of the Arbitration

Agreement, the Federal Arbitration Act ("FAA") governs its enforceability.  (ECF No. 8-1 at p. 19).  The parties agree that the Court may decide this challenge on the existing record.  (ECF No. 51 at p. 4).

As a general rule, signatures are not required unless such signing is expressly required by law or by the intent of the parties.  *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 63, 739 A.2d 133, 136 (1999).   The Arbitration Agreement, by its terms, does not require signature as a condition precedent to enforce, and the FAA requires only that the Arbitration Agreement be written, not that it be signed. 9 U.S.C. § 2.  By the Agreement's terms, receipt of the Agreement and continued employment constitute acceptance. (ECF No. 8-1 at p. 19).  That the Agreement contains a signature line does not affect its enforceability. *See Hoffman v. Compassus*, 2019 WL 1791413, *8 (E.D. Pa. 2019) (holding that lack of signature is not material and does not render the arbitration agreement invalid and that continued employment sufficiently demonstrates the acceptance and consideration required for an enforceable arbitration agreement).

Here, neither the Arbitration Agreement nor the FAA requires that the parties must sign the Agreement as a condition precedent to be bound. No explicit condition had to be satisfied before the Agreement was made, and the Purported Opt-in Arbitration Plaintiffs manifested their acceptance by continuing to work at Dick's.  Therefore, it is apparent from the face of the Complaint and supporting documents that it is immaterial whether or not Dick's signed the Arbitration Agreement.

Accordingly, the Court rejects Plaintiffs' challenge to Defendant's Motion to Compel Arbitration on the basis that Dick's did not sign the Arbitration Agreement.

### C.  Alleged Pressure to Acknowledge the Arbitration Agreement

Plaintiffs next challenge Dick's Motion to Compel Arbitration on the basis that Dick's pressured seven of the Purported Opt-in Arbitration Plaintiffs to acknowledge the Arbitration Agreement.  Dick's contends that these claims are immaterial, because, at most, even if the seven Purported Opt-in Arbitration Plaintiffs were pressured to acknowledge receipt, they were  not pressured to opt-in to the arbitration agreement.   Dick's contends that the Court can decide this issue without any further development of the record. (ECF No. 51 at p. 4).  Plaintiffs have requested discovery on the following issues 1) whether Dick's communicated to employees that they could opt out without suffering negative repercussions; and (2) to inquire about the basis by which Victorelli asserts that 950 employees have opted out without suffering negative repercussions of any kind. (ECF No. 43 at p. 18).

Among the seven Purported Opt-in Arbitration Plaintiffs who fall into this category, they have declared as follows:

<u>Anthony Albacete</u>

My Store Manager at the time, B.J. Chavez, advised me that Dick's required that all employees sign the acknowledgement of the Arbitration Agreement. It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. Thus, I felt pressured to sign the acknowledgement of the Arbitration Agreement.  (ECF No. 43-2 at ¶ 3).

<u>Hillary Goodliff</u>

Dick's required that I acknowledge receipt of the Arbitration Agreement. At the time, there was significant pressure from Dick's to ensure that everyone acknowledge the Arbitration Agreement. In fact, I recall that the District Manager, Steve Bowers, advised on a conference call and/or over email that it was mandatory for all employees to acknowledge receipt of the Arbitration Agreement. This message was echoed by the Store Manager, James Ferry.  It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. Thus, I felt pressured to sign the acknowledgement of the Arbitration Agreement.  (ECF No. 43-7 at ¶¶ 3-4).

<u>John Hickey</u>

Dick's required that I acknowledge receipt of the Arbitration Agreement. At the time, there was significant pressure from Dick's to ensure that everyone acknowledge the Arbitration Agreement. It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. Thus, I felt pressured to sign the acknowledgement of the Arbitration Agreement. (ECF No. 43-8 at ¶¶ 3-4).

Alexis Lissabet

Dick's required that I acknowledge receipt of the Arbitration Agreement. At the time, there was significant pressure from Dick's to ensure that everyone acknowledge the Arbitration Agreement. In fact, I recall my District Manager, Ashley (last name unknown), advised that Dick's was requiring that everyone sign the acknowledgement of the Arbitration Agreement. This message was echoed by my Store Manager, Jeff Barrish. It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. Thus, I felt pressured to sign the acknowledgement of the Arbitration Agreement. (ECF No. 43-11 at ¶¶ 3-4).

Lorenzo Moreira

Dick's required that I acknowledge receipt of the Arbitration Agreement. At the time, there was significant pressure from Dick's to ensure that everyone acknowledge the Arbitration Agreement. In fact, I recall that the District Manager and/or Regional Administrative Assistant would send weekly reports listing who had not yet acknowledged the Arbitration Agreement and pressure the stores to ensure that the outstanding employees acknowledge the Arbitration Agreement by their very next shift. It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. Thus, I felt pressured to sign the acknowledgement of the Arbitration Agreement. (ECF No. 43-12 at ¶¶ 3-4).

Falon Saint James

I recall Dick's rolling out the Arbitration Agreement. At the time, there was significant pressure from Dick's to ensure that all employees acknowledge the Arbitration Agreement. My District Manager sent weekly lists to my Store Manager showing who had not acknowledge the agreement and the employees whose names were contained on the list would be pressured to acknowledge the Arbitration Agreement and told they could not work until they signed it. I did not want to sign the agreement, and delayed in doing so, but ultimately Dick's required that I acknowledge receipt of the Arbitration Agreement. It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. (ECF No. 43-14 at ¶ 3).

Hunter Whitaker

Dick's required that I acknowledge receipt of the Arbitration Agreement. At the time, there was significant pressure from Dick's to ensure that everyone acknowledge the Arbitration Agreement. In fact, I recall that there was a quota of "90%." I do not specifically recall if the 90% quota referenced the percentage of employees who had acknowledge the Arbitration Agreement or whether 90% of employees needed to not opt-out of the Arbitration Agreement.  It was my understanding that failure to sign the acknowledgement of the Arbitration Agreement would result in discipline or termination. Thus, I felt pressured to sign the acknowledgement of the Arbitration Agreement.

Pursuant to the language of the Arbitration Agreement, Dick's employees are permitted to opt-out of the Agreement to Arbitrate Claims without suffering any negative repercussions.  (ECF No. 8-1 at p. 22).  The Agreement itself sets forth the procedures for opting-out.  *Id.* at pp. 21-22.

The Arbitration Agreement states in relevant part as follows:

**EMPLOYEE OPT-OUT RIGHTS:** EMPLOYEE HAS THIRTY (30) DAYS AFTER RECEIVING THIS AGREEMENT TO OPT OUT OF ARBITRATION. IF EMPLOYEE OPTS OUT, THEN NEITHER THE COMPANY NOR THE EMPLOYEE WILL BE BOUND BY THE TERMS OF THIS AGREEMENT. TO OPT OUT EMPLOYEE MUST: (1) NOTIFY THE COMPANY IN WRITING THAT EMPLOYEE IS OPTING OUT, (2) SIGN THE WRITING; AND (3) SEND THE SIGNED WRITTEN NOTICE TO THE COMPANY'S SENIOR VICE PRESIDENT OF HUMAN RESOURCES ATTACHED TO AN E-MAIL AT HRSolutions@dcsg.com AND/OR BY CERTIFIED MAIL TO DICK'S SPORTING GOODS, INC., 345 COURT STREET, CORAOPOLIS, PA, 15108, ATTN SENIOR VICE PRESIDENT OF HUMAN RESOURCES SO THAT THE SENIOR VICE PRESIDENT OF HUMAN RESOURCES RECEIVES IT NO LATER THAN THIRTY (30) DAYS AFTER THE DATE EMPLOYEE RECEIVED THIS AGREEMENT. SUCH WRITTEN NOTICE MAY SIMPLY STATE, "I WISH TO OPT OUT OF THE ARBITRATION PROGRAM" OR WORDS TO THAT EFFECT. IF NO SUCH NOTICE IS DELIVERED BEFORE THE THIRTYDAY DEADLINE, THEN THIS AGREEMENT WILL BECOME FULLY EFFECTIVE AND BINDING UPON THE DATE BELOW. IF EMPLOYEE OPTS OUT, THE DECISION TO DO SO WILL NOT ADVERSELY AFFECT EMPLOYEE'S EMPLOYMENT IN ANY WAY.

**I ACKNOWLEDGE THAT I HAVE REVIEWED THIS AGREEMENT AND THAT I UNDERSTAND THAT I HAVE THIRTY (30) DAYS TO OPT OUT OF ARBITRATION IF I DO NOT WISH THIS AGREEMENT TO APPLY TO ME. THIS ACKNOWLEDGMENT OF RECEIPT MAY BE SIGNED ELECTRONICALLY.**

(ECF No. 8-1 at p. 13).

"Parties cannot be permitted to repudiate their written contracts merely by asserting that they neglected to read them, or did not really mean them." *Bullick v. Sterling Inc.*, 2004 WL 2381544, at *5 (E.D.Pa. Oct.21, 2004); *see also Green v. Shearson Lehman/Am. Express Inc.*, No 85-1368, 1985 WL 2640, at *1 (E.D.Pa. Sept.10, 1985) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (Pa.1983)). In addition, ignorance of the contents of a document before signing is no defense to a contractual obligation under Pennsylvania law. *Tose v. First Pa. Bank, N.A.*, 648 F.2d 879, 900 (3d Cir.1981); *Estate of Brant*, 463 Pa. 230, 235-36, 344 A.2d 806 (Pa.1975).

First, with the regard to Plaintiffs' request for further discovery as to "whether Dick's communicated to employees that they could opt out without suffering negative repercussions," discovery is not necessary given the relevant language of the Arbitration Agreement. The provisions clearly communicated that Dick's would not take adverse action against any opt-out employee. The pressure, as Plaintiffs assert, is misleading in that Dick's only required employees to acknowledge the Arbitration Agreement. Employees were expressly given the option to opt-out, with no adverse employment action, if and when they followed the prescribed procedures. The language within the document was clear and each employee could have followed the prescribed procedures to opt-out of arbitration without adverse employment consequences.

Second, with regard to Plaintiff's request to determine "upon what basis Victorelli asserts that 950 employees have opted out without suffering negative repercussions of any kind," such discovery is not relevant to the plaintiffs' argument that each felt pressure at the time each acknowledged the opt-in agreement. How and why other employees experienced any adverse

consequences for opting-out has no bearing upon any alleged pressure each opting-in employee felt when completing the opt-in process. The focus for the Plaintiffs' argument is what each knew at the time each completed the process. Further, Plaintiffs have not asserted that, as of the date they acknowledged the Arbitration Agreement, they knew of any opt-out employees who had experienced any negative repercussions. In addition, no Opt-in Arbitration Plaintiff has made any assertion of fact to support that, as of the date each signed the agreement, Dick's would have imposed any negative repercussions if an employee opted-out. The Plaintiffs' discovery request to this issue only invites a speculative fishing expedition.

Finally, requiring employees to acknowledge an arbitration agreement, containing express language to communicate that an opt-out decision is permissible with no negative employment consequence, is an acceptable condition of continued employment. In addition, an agreement, which provides that an employee, who does not expressly opt-out of arbitration and who thereafter continues employment, is deemed to have accepted the agreement to arbitrate, is valid. *See, e.g. Smaller v. JRK Residential Mgmt. Corp.*, No. CV 16-2066, 2017 WL 616742, at *3 (E.D. Pa. Feb. 15, 2017) (continued employment provides sufficient consideration for arbitration agreements under Pennsylvania law). Therefore, further discovery on this issue is not necessary. Plaintiffs challenge can be decided based upon the record presented.

It is apparent from the face of the Complaint and supporting documents that any alleged pressure upon the Purported Opt-in Plaintiffs was illusory, as the documents expressly requested that each employee only acknowledge the agreement, provided opt-out ability, communicated no adverse employment consequences for any who opt-out, and provided that non-opt-out employees who continued employment accepted the agreement to arbitrate. Accordingly, the Court rejects Plaintiffs' challenge to Defendant's Motion to Compel Arbitration on the basis that

Dick's allegedly pressured Purported Opt-In Arbitration Plaintiffs to acknowledge the

Arbitration Agreement.

### D.  Lack of Recollection of Acknowledging Agreement.

Plaintiffs next challenge Defendant's Motion to Compel because five Purported Opt-in

Arbitration Plaintiffs assert that they did not recall acknowledging the Arbitration Agreement.

Dick's contends that lack of memory is irrelevant.  Dick's asserts that the Court can decide this

challenge on the existing record.  (ECF No. 51 at p. 4).  Purported Opt-in Arbitration Plaintiffs

Everitt, Fuente Hernandez, Jaxx, Powell, and Sell all claim that they do not recall acknowledging

receipt of the Arbitration Agreement.  Everitt, Fuente Hernandez, Jaxx, and Powell each declared

as follows:

> I have no recollection of ever receiving or acknowledging receipt the Arbitration
> Agreement. While I do recall completing paperwork during the onboarding process,
> I do not recall being presented with additional paperwork or being asked to
> acknowledge an Arbitration Agreement thereafter.  If I had received the Arbitration
> Agreement as Dick's claims, I would have either refused to acknowledge my
> receipt of the document to demonstrate my unwillingness to be bound by its terms
> or exercised my option to opt out of the Arbitration Agreement. Had I received the
> Arbitration Agreement, I would not have voluntarily waived my right to participate
> in lawsuit like this one or to a jury trial. (ECF Nos. 43-5 at ¶¶ 3-4; 43-6 at ¶¶ 3-4;
> 43-9 at ¶¶ 3,5; 43-13 at ¶¶ 3-4; )

Sell similarly declared as follows, "I recall completing onboarding documents, but do not recall

the Arbitration Agreement being part of the onboarding documents I completed." (ECF No. 43-

15 at ¶ 3).

As explained above by Deborah Victorelli, the PeopleSoft program recorded the actions

of the Purported Opt-in Arbitration Plaintiffs via date and time stamp confirming that they

acknowledged receipt of the Arbitration Agreement.  (ECF No. 8-1 at pp. 33-40).  Again, the

Purported Opt-in Arbitration Plaintiffs do not refute the onboarding and/or acknowledgment

process described in Deborah Victorelli's declaration.  Dick's also submitted a declaration from

Kelly Holtzman, a Senior Manager of Human Resources Information Systems.  (ECF No. 45-1).
In her declaration, Ms. Holtzman asserted that new hires received a unique Network user ID with
a randomly generated password.  (ECF No. 45-1 at ¶ 2).  New hires are then prompted to reset
the password to something secret and unique.  *Id*. at ¶ 4.  Ms. Holtzman asserts that these new
passwords, which are used to log in to PeopleSoft, are not shared with other employees or
supervisors.  *Id.*  She further asserts that the PeopleSoft program database only records a date and
time stamp for an acknowledgement of the Arbitration Agreement if the employee has first
logged in with his or her user ID and secret password that said employee created.  *Id*. at ¶ 15.
According to Ms. Holtzman, another employee or supervisor is not able to login and
acknowledge the Arbitration Agreement on behalf of another employee.  *Id*.  Plaintiffs have not
asserted that any of this data processing information from Ms. Victorelli or Ms. Holtzman.
is not accurate and/or manipulated.

   "[P]arties are presumed to have knowledge of contracts they have signed." *Quilloin v.
Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 237 (3d Cir. 2012). "With respect to
contractual disputes, federal courts have consistently held that a party's failure to recall a
relevant event is insufficient to raise an issue as to the occurrence of that event." *Gomez v. Rent-
A-Ctr., Inc.*, No. 2:18-CV-1528-KM-SCM, 2018 WL 3377172, at *3 (D.N.J. July 10, 2018)
(finding that a plaintiff's certification that she did not remember electronically signing an
arbitration agreement was insufficient to defeat a motion to compel arbitration).

   Here, Plaintiffs' assertion, that certain Purported Opt-In Arbitration Plaintiffs do not
remember executing the Arbitration Agreements, does not create a factual dispute.   Dick's
records demonstrate that each employee or new hire logs in using his or her personal account to
execute the Arbitration Agreement. Plaintiffs have only raised the issue of recollection, and they

have not raised the issue that the electronic process or the produced data is inaccurate.    In light of the Plaintiffs' positions and declarations provided by Dick's, the Court may decide this challenge on the existing record.  It is apparent from the face of the Complaint and supporting documents that there is no issue of fact whether the Purported Opt-in Arbitration Plaintiffs received and acknowledged receipt of the Arbitration Agreement.  Plaintiffs are presumed to have received the Arbitration Agreement whether they currently recollect or not.

Accordingly, the Court rejects Plaintiffs' challenge to Dick's Motion to Compel on the basis that Purported Opt-in Arbitration Plaintiffs do not recall having acknowledged the Arbitration Agreement.

### E.  Denial of Arbitration Agreement Acknowledgment

Three Purported Opt-in Arbitration Plaintiffs, Alvarez, Donnelly, and Kanowitz, contend that Dick's Motion to Compel should be denied because each expressly denies acknowledging receipt of the Arbitration Agreement.  Dick's argues that merely denying acknowledging acceptance of an arbitration agreement does not disprove formation.  Dick's contends the Court may decide this challenge on the existing record.  (ECF No. 51 at p. 5).  In their declarations, Alvarez, Donnelly, and Kanowitz assert as follows:

Dennis Alvarez

I did not ever receive or acknowledge receipt of the Arbitration Agreement. I do not recognize this document and never acknowledged receipt or otherwise submitted anything to reflect my agreement to be bound by its terms. (ECF No. 43-3 at ¶3).

Connor Donnelly

While I recall seeing this document during my employment at Dick's, I personally never acknowledged receipt or otherwise submitted anything to reflect my agreement to be bound by its terms. Dick's claim that I signed an Arbitration Agreement on July 5, 2016 is false because I recall the Arbitration Agreement

being rolled out, but I had already moved stores and was working as an ASM at the time, so the roll out of the Arbitration Agreement could not have been prior to approximately October 2017.  (ECF No. 43-4 at ¶¶ 4-5).

Ken Kanowitz

I personally never acknowledged receipt or otherwise submitted anything to reflect my agreement to be bound by its terms. I do recall participating in an onboarding process on April 2, 2018, however the only forms that I recall reviewing during this process were tax forms. As a new employee, I did not have my own login credentials at the time of onboarding. Therefore, for me to complete the onboarding paperwork, my hiring manager, who I believe was Kim (last name unknown), had to assist me with the login process. I do not know whether my hiring manager or somebody else acknowledged the Arbitration Agreement on my behalf. (ECF No. 43-10 at ¶¶ 3-5).

As detailed above, Ms. Victorelli and Ms. Holtzman have described in detail the PeopleSoft program, acknowledgment process, and electronic record keeping by Dick's.   Said records indicate that Alvarez, Donnelly, and Kanowitz acknowledged receipt of the Arbitration Agreement.  (ECF No. 45-1).   Again, as above, other than their denial, Plaintiffs have not raised any issue as to the accuracy of these records or the veracity of Dick's Arbitration Agreement process.

Under Pennsylvania law, contracts are enforceable merely by showing that the parties manifest an intent to be bound by the terms of the agreement (i.e., offer and acceptance). *See Johnston the Florist, Inc. v. TEDCO Constr. Co.*, 657 A.2d 511, 516 (Pa. Super. 1995).   In circumstances such as this one, where plaintiffs denied agreeing to arbitration but electronic records proved otherwise, courts have rejected those challenges as a basis to deny contract formation.  *See Schrock v. Nomac Drilling, LLC*, 2016 WL 1181484, at *3 (W.D. Pa. Mar. 28, 2016) (noting that, where the plaintiff was required to use private login information, known only to him, to electronically acknowledge an arbitration agreement, "[p]laintiff's naked assertions that he never did so are insufficient to lead the Court to conclude otherwise" [emphasis added]);

17

*Dicent v. Kaplan Univ.*, 2018 WL 4171600 (M.D. Pa. June 15, 2018), report and recommendation adopted, 2018 WL 4169072 (M.D. Pa. Aug. 30, 2018), aff'd, 758 F. App'x 311 (3d Cir. 2019) (where proper "security measures" were taken to "verify the electronic signature" of the plaintiff, the plaintiff "failed to create a genuine issue of fact as to whether she assented to the Arbitration Agreement") ; *see, e.g., Aldrich v. Univ. of Phx., Inc.*, 661 F. App'x 384, 390-91 (6th Cir. 2016) (compelling arbitration and dismissing action where plaintiff was provided the arbitration agreement through the company's intranet, despite plaintiffs' submission of declarations denying acknowledgment of the agreement); *Lockette v. Morgan Stanley*, 2018 WL 4778920, at *4 (S.D.N.Y. Oct. 3, 2018) ("a plaintiff's mere denial of receipt of an email containing arbitration agreement was insufficient" to deny a motion to compel arbitration); *Locke-O'Dell v. Glob. Client Sols., LLC*, 12-2009-CM, 2012 WL 1033624, at *3 (D. Kan. Mar. 27, 2012) (rejected plaintiff's argument against arbitration, where she argued that "she did not receive a copy of the [arbitration] agreement and that its contents were unknown to her at the time it was made," and that "she did not execute or initial each page of the agreement, but that the agreement was signed 'using an electronic signature that plaintiff did not sanction and would not have sanctioned if she were armed with the truth'").

Here, the Plaintiffs do not dispute that the three Purported Opt-In Arbitration Plaintiffs, who each denies signing the Arbitration Agreement, continued to work at Dick's, which manifested assent according to the terms of the Arbitration Agreement. (ECF No. 8-1 at p. 19). As above, the Plaintiffs do not refute the methods utilized by Dick's in its recordkeeping practices or the process by which the PeopleSoft system operates. Plaintiffs only offer their blanket denials. Such are insufficient to create a genuine issue of fact to warrant further discovery or to deny Dick's Motion to Compel.

Accordingly, the Court rejects the Purported Opt-in Arbitration Plaintiffs' challenge to Dick's Motion to Compel Arbitration based upon said plaintiffs' denial of having acknowledged the Arbitration Agreement.

### F.   Unchecking acknowledgment of the Agreement.

Purported Opt-In Arbitration Plaintiff Anthony Albacete argues that Dick's Motion to Compel should be denied because he attempted to subsequently opt-out of the Agreement by later unchecking the acknowledgment box through PeopleSoft.  Dick's argues that Mr. Albacete did not act to opt-out within 30 days of his acknowledgement; and thus, he did not comply with the proper opt-out procedures.

Anthony Albacete recalls, and Dick's electronic computer records confirm, that he acknowledged receipt of the Arbitration Agreement on August 1, 2016 at 9:09 a.m. (ECF No. 43-2 at ¶¶ 2-3).  He declares that he attempted to uncheck the box reflecting the acknowledgement "a few months later" and/or "in late 2016." *Id*. at ¶¶ 5-6.  Thereafter, he continued to work for Dick's for two additional years. *Id*. at ¶ 8.  As outlined in the Arbitration Agreement, an employee may opt out of the Arbitration Agreement by providing a statement in writing to Dick's human resources, but the employee must do so within 30 day of acknowledgment.  (ECF No. 8-1 at p. 13).

Here, Mr. Albacete does not challenge the validity of the procedures outlined in the Arbitration Agreement.  He did not opt-out in writing within the required 30-day time period. Therefore, under the plain terms of the Agreement, which are not in dispute, Mr. Albacete did not properly opt-out of the Arbitration Agreement.  It is apparent from the face of the Complaint

and supporting documents that Mr. Albacete's arguments fail to relieve him from his obligation to arbitrate under the Arbitration Agreement.

Accordingly, the Court rejects the Purported Opt-In Arbitration Plaintiff's challenge to Dick's Motion to Compel on the basis that Mr. Albacete subsequently unchecked his prior acceptance of the acknowledgment box.

IV. Conclusion

Upon consideration of Dick's Motions to Compel Arbitration, Strike Consent Forms, and Dismiss the Claims of the Purported Opt-in Plaintiffs and Briefs in Support (ECF Nos. 7, 8, 19, and 20), Plaintiffs' Brief in Opposition (ECF No. 43), Dick's Reply Brief (ECF No. 45), Plaintiffs' Sur-Reply Brief (ECF No. 48), the Parties' Joint Status Report (ECF NO. 51), and for the foregoing reasons, Defendant's Motion to Compel Arbitration is granted.   The Purported Opt-In Plaintiffs' Consent Forms (ECF Nos. 3 and 15) for Albacete, Alvarez, Donnelly, Downar, Everitt, Fuentes Hernandez, Goodliff, Hickey, Jaxx, Kanowitz, Lissabet, Moreira, Powell, Pysola, Saint James, Sell, and Whitaker are stricken, and said Purported Opt-in Plaintiffs shall be dismissed.

As this decision renders Plaintiffs' Motion to Stay (ECF No. 21) moot, the same shall be dismissed.

A separate order will follow.


DATE: August 3 , 2020

Marilyn J. Horan
United States District Judge

20